ALBERT S. J. MARSH, *et al., Appellants,* v. J. E. J MARSH, *et al., Appellees.*

Opinion Filed Aug. 2, 1916.

1. Courts of equity have a general supervision over judicial sales made under their decrees and may set aside or vacate sales for cause, even after confirmation.

2. After confirmation a judicial sale may be set aside by an original bill in equity, even though a petition might also be an appropriate proceeding for that purpose.

3. While mere inadequacy of price may not be sufficient in itself to justify setting aside a judicial sale of property, courts are not slow to seize upon other circumstances impeaching the fairness of the transaction as a cause for vacating it, especially if the inadequacy be so gross as to shock the conscience, and when such inadequacy is connected with, or shown to result from any mistake, accident, surprise, misconduct, fraud or irregularity the sale will generally be set aside.

4. Where an original bill in equity is filed for the purpose of setting aside a judicial sale and alleges that the lands were worth at a fair valuation eight or ten thousand dollars and yet the same were sold at such judicial sale for the gross sum

of $800.00 to the defendants, though one of the complainants had stated prior to such sale that he was willing to pay $5,000.00 for such lands and requested one of the defendants to bid that sum for such complainant at such sale, which such defendant promised to do, but failed to keep such promise; that such complainant is still ready and willing to pay the sum of $5,000.00 for such lands, and that complainants know of other persons who are ready and willing to bid such amount, and perhaps more for such lands, if the same are ordered re-sold; that one of the defendants used every effort to keep bidders away from the sale and deterred and discouraged persons from being present at the sale and bidding thereat by making false and fraudulent representations to them; and that such sale was not held during the legal hours of sale, a demurrer is erroneously sustained to the bill.

5.  A demurrer to the whole bill in equity operates as an admission that all such matters of fact as are well and sufficiently pleaded in the bill are true, though allegations of law are not admitted by the demurrer, for the law is to be ascertained by the court.

Appeal from Circuit Court, Volusia County; Jas. W. Perkins, Judge.

Order reversed.

*Stewart & Stewart,* for Appellants;

*Landis, Fish & Hull,* for Appellees.

PER CURIAM.—This is the second appeal that has been prosecuted in this case. See Marsh v. Marsh, 68 Fla. 355, 67 South. Rep. 81, which was an appeal from an interlocutory order sustaining "exceptions taken to the bill of complaint." As we said in the opinion rendered on the former appeal: "The bill seeks to vacate

an order confirming a sale of lands made in a partition proceeding on the grounds of fraudulent conduct on the part of one of the parties to the suit for partition which resulted in a sale of the property at a grossly inadequate price far below its real value at the time."

Upon the going down of the mandate, two of the defendants interposed a demurrer to the bill which was sustained and the complainants have entered their appeal from such interlocutory order. The bill of complaint covers 13 typewritten pages and the demurrer covers nearly 9 of such pages, and we see no occasion for copying either the bill or demurrer.

That courts of equity have a general supervision over judicial sales made under their decrees and may set aside or vacate sales for cause, even after confirmation, there can be no question. See 24 Cyc. 37, and authorities there cited. To the same effect is the holding of this court in Macfarlane v. Macfarlane, 50 Fla. 570, 39 South. Rep. 995, and Florida Fertilizer Mfg. Co. v. Hodge, 64 Fla. 275, 60 South. Rep. 127. It is also well settled that after confirmation a judicial sale may be set aside by an original bill in equity, even though a petition might also be an appropriate proceeding for that purpose: Lawyers' Co-operative Publishing Co v. Bennett, 34 Fla. 302, 16 South. Rep. 185; Macfarlane v. Macfarlane, *supra;* Florida Fertilizer Co. v. Hodge, *supra.* See also 24 Cyc. 44. As we said in the opinion rendered on the former appeal, the bill not only alleges that the lands in question brought a grossly inadequate price at the judicial sale, but that this was brought about by the fraudulent conduct of one of the parties to the suit; In Macfarlane v. Macfarlane, *supra,* following the prior holding in Lawyers' Co-operative Publishing Co. v. Bennett, *supra,* and in line with the general rule established by the courts,

we stated that, while mere inadequacy of price would not be sufficient to warrant the setting aside of a judicial sale, "when such inadequacy is connected with or shown to result from any mistake, accident, surprise, misconduct, fraud or irregularity the sale will genrally be set aside." We also referred with approval to the holding in Schroeder v. Young, 161 U. S. 334, 16 Sup. Ct. Rep. 512. "While mere inadequacy of price has rarely been held sufficient in itself to justify setting aside a judicial sale of property, courts are not slow to seize upon other circumstances impeaching the fairness of the transaction, as a cause for vacating it, especially if the inadequacy be so gross as to shock the conscience."

Very concisely stated, the bill of complaint in the instant case alleges, among other things, that the lands embraced in the decree and particularly described in the bill were worth at a fair valuation eight or ten thousand dollars and yet the same were sold at such judicial sale for the gross sum of $840.00 to the defendants, J. E. J. Marsh, Walter S. Marsh and Herbert H. Marsh, though George Marsh, one of the complainants, had stated prior to such sale to Herbert H. Marsh that he was willing to pay $5,000.00 for such lands and requested Herbert H. Marsh to bid that sum for such complainant at such sale, which Herbert H. Marsh promised to do, but failed to keep such promise. The bill further alleges that such complainant is still ready and willing to pay the sum of $5,000.00 for such lands, and that the complainants know of other persons who are ready and willing to bid such amount, and perhaps more for such lands, if the same are ordered re-sold. The bill also contains the following allegations:

"Your orators further show that while the defendant, Hebert H. Marsh, was the nominal complainant in

said partition proceedings, the said proceedings were managed and controlled by the defendant, J. E. J. Marsh, who became the principal purchaser at said sale, and were so managed and controlled by said J. E. J. Marsh in his own personal and individual interest and with the sole and fraudulent purpose of enabling him to become the owner of said lands for a mere nominal considera- tion.    That in pursuance of said fraudulent purpose the said defendant, J. E. J. Marsh, as your orators are in- formed and believe, and so allege the fact to be, used every effort to keep bidders away from said sale, and to deter persons from being present thereat who desired to bid upon said lands; and your orators allege upon infor- mation and belief that prior to said sale inquiries were made of said J. E. J. Marsh respecting said sale by divers persons desiring to be present thereat for the pur- pose of bidding upon portions of said lands, but said J. E. J. Marsh deterred and discouraged said persons from being present at said sale, and falsely and fraudulently stated in response to said inquiries that the persons inter- ested in said lands as the heirs of said Reuben Marsh were intending to buy the lands in at said sale and did not desire bidders thereat.

"Your orators further show that said sale was adver- tised to occur on the 6th day of May, 1912, and your ora- tors believing that said date was not the best time of the year to place said lands upon the market at forced sale, your orator, Albert S. J. Marsh, protested to the said complainant, Herbert H. Marsh, against said sale being made at that time, and urged a postponement of said sale, and the said Herbert H. Marsh promised and as- sured your orator that said sale would be postponed and would not occur upon said 6th day of May.  But your orator says that notwithstanding the said promise and as-

surance to your orator, the said Herbert H. Marsh refused to postpone said sale, and without any notice to, or knowledge of, your orator of his change of purpose in that respect held said sale on the said 6th day of May, as advertised.

"Your orators further show that said sale was advertised to occur 'during the legal hours of sale' on said 6th day of May, 1912, and that by law all sales of property under legal process are required to take place between the hours of 11 o'clock in the forenoon and 2 o'clock in the afternoon. But your orators say that said sale was not held during the legal hours of sale as advertised, but in fact took place and was held prior to 11 o'clock in the forenoon, on said 6th day of May, and was fully consummated and completed prior to said hour."

The prayer of the bill is as follows:

"WHEREFORE, your orators pray that the said sale of May 6, 1912, and the order confirming the same, and any deeds executed in pursuance thereof, may each and all be vacated, annulled, and set aside; that said lands may be re-sold at public sale, either by the commissioners who made the original sale or by a master in chancery appointed by the court; that such sale be made at such time, upon such notice and under such condition as to the court may seem proper, and that your orators may have such other and further relief as the nature of the case may require."

As we have repeatedly held: "A demurrer to the whole bill in equity operates as an admission that all such matters of fact as are well and sufficiently pleaded in the bill are true, though allegations of law are not admitted by the demurrer, for the law is to be ascertained by the court." See Capital City Bank v. Hilson, 64 Fla. 206, 60

South. Rep. 189, Ann. Cas. 1914 B 1211, and prior decisions of this court there cited.

It necessarily follows from what we have said that the demurrer was erroneously sustained to the bill, therefore the interlocutory order appealed from must be reversed.

TAYLOR, C. J., and SHACKLEFORD, COCKRELL, WHITFIELD and ELLIS, JJ., concur.